2024 IL App (1st) 240496-U

No. 1-24-0496B

Order filed May 16, 2024

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. DV  7132501 |
| | ) | |
| SYLVESTER JONES, | ) | Honorable |
| | ) | Michael J. Hogan, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE LYLE delivered the judgment of the court.
Presiding Justice Mitchell and Justice Mikva concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the circuit court's order granting the State's petition for pretrial detention.

¶ 2    Defendant Sylvester Jones appeals from an order of the circuit court denying him pretrial release under article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022) (Code)), as amended by Public Act 101-652 § 10-255 (eff. Jan. 1, 2023), commonly known as the Safety, Accountability, Fairness and Equity-Today Act (Act). Mr. Jones contends that the trial court erred in granting the State's petition because the State failed to meet its burden

of proving by clear and convincing evidence that the proof is evident or the presumption great that he committed the offense charged and that the threat posed by Mr. Jones could not be adequately mitigated if he were released and placed on electronic monitoring. He also argues that the court erred in its determination that no condition or combination of conditions would reasonably ensure the appearance of Mr. Jones for later hearings or prevent him from being charged with a subsequent felony or Class A misdemeanor. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 3                                I. BACKGROUND

¶ 4     On February 20, 2024, Mr. Jones was arrested and charged with home invasion and domestic battery. On February 21, 2024, the State filed a verified petition for pretrial detention, arguing that Mr. Jones committed the detainable offense of home invasion; that he posed a real and present threat to the community; and that no conditions or combination of conditions could mitigate that threat.

¶ 5     The State proffered that the victim, Sadie Scales, was Mr. Jones' ex-girlfriend. Mr. Jones and Ms. Scales had known each other for eight years and shared a six-year-old son. On February 20, 2024, at approximately 11:30 p.m., Ms. Scales was asleep on her couch when she briefly opened her eyes and saw a dark figure run into one of the bedrooms. When she rose from the couch, she realized Mr. Jones was in her apartment. Mr. Jones ran towards Ms. Scales and asked her who she was having sex with. Mr. Jones then punched and slapped her, telling her to go down the hallway towards the kitchen.

¶ 6     While going down the hallway, Mr. Jones continued to punch and hit Ms. Scales, pushing her into the bathroom and causing her to fall into the bathtub. She heard Mr. Jones say that her "man" was on his way over. She understood Mr. Jones was talking about her boyfriend, Jermaine.

¶ 7     Jermaine told the police that on February 20, 2024, at approximately 11 p.m., he received a phone call from an unknown number. He heard an unfamiliar voice and believed it to be someone pretending to be Ms. Scales, inviting him to her apartment. Jermaine went to Ms. Scales' apartment and heard her screaming upon entering the building. When he reached her apartment, he found the door to be wide open. He followed the screams and found Mr. Jones with a pair of kitchen scissors in his hand, standing over Ms. Scales who was in the bathtub. Mr. Jones started swinging at Jermaine, stabbing him with the scissors. After a scuffle, Jermaine dragged Mr. Jones out of the apartment. After police arrived, Jermaine returned inside to help Ms. Scales with her child. As Jermaine walked out of the apartment with Ms. Scales' child in his arms, Mr. Jones, who was standing with police, lunged, and hit Jermaine, causing the child to hit his head on a pole.

¶ 8     Ms. Scales made a victim statement, telling officers that Mr. Jones had abused her before. She stated that he had previously attacked her at work and appeared at other places. According to Ms. Scales, she and Mr. Jones argued a couple of days before the incident and that she did not invite Mr. Jones over. The State proffered Mr. Jones' criminal history, consisting of a 2020 domestic violence arrest. Ms. Scales had an order of protection against him at the time of his 2020 arrest.

¶ 9     Defense counsel presented mitigation on behalf of Mr. Jones, providing that Mr. Jones was 29 years old and had lived in the Chicagoland area for 19 years. He graduated from high school and earned an associate degree and a degree in criminal justice. He also volunteered on the weekend with his uncle who is a pastor. According to Mr. Jones, he was invited by Ms. Scales to her apartment to talk about their previous argument. Though Mr. Jones conceded that he and Ms. Scales argued at her apartment, he denied touching her. Defense counsel argued that Mr. Jones'

lack of domestic violence convictions or other pending criminal cases indicated that he was a suitable candidate for GPS.

¶ 10    In rebuttal, the State argued that less restrictive means were inappropriate because Mr. Jones demonstrated his lack of regard for protective orders by violating the previous order of protection and attacking Jermaine in front of police while in custody.

¶ 11    The circuit court found that the State had by shown clear and convincing evidence that Mr. Jones committed home invasion and domestic battery. The court also found that Mr. Jones posed a real and present danger to the community based on Ms. Scales' allegations that he entered her home without permission in the middle of the night and that the parties had a previous domestic violence case. When considering whether a condition or combination of conditions would mitigate the risks of Mr. Jones' release, the court noted that Mr. Jones "has disregarded court orders" and that there were no less restrictive conditions that would avoid the real and present dangers posed by Mr. Jones. The court therefore ordered him to be detained.

¶ 12                                II. ANALYSIS

¶ 13    Mr. Jones filed a timely notice of appeal from the circuit court's order. We find that we have jurisdiction to consider the merits of this appeal. See 725 ILCS 5/110-6.1(j) (West 2022); Ill. S. Ct. R. 604(h)(1)(iii) (eff. Sept. 18, 2023).

¶ 14    In Mr. Jones' notice of appeal, he contends that the State failed to meet its burden of proving by clear and convincing evidence on two of the three elements under subsection (e) of section 110-6.1. He also argues that the court erred in its determination that no condition or combination of conditions would ensure his appearance for later hearings or prevent him from being charged with a subsequent felony or Class A misdemeanor.

¶ 15 We first note, the Act established a presumption that all criminal defendants are eligible for pretrial release. 725 ILCS 5/110-6.1(e) (West 2022). The State has the burden of rebutting that presumption by proving at a hearing that a defendant should be denied pretrial release. *Id.* The Act provides a list of offenses for which the State may seek detention. *Id* § 110-6.1(a)(1)-(7). To meet its burden, the State must prove by clear and convincing evidence that: (1) the proof is evident or the presumption great that the defendant has committed an offense that qualifies for pretrial detention; (2) the defendant poses a real and present threat to the safety of any person or persons in the community, based on the specific and articulable facts of the case; and (3) no condition or combination of conditions of pretrial release can mitigate the real and present threat to the safety of any person or persons in the community, based on the specific and articulable facts of the case. *Id.* at § 110-6.1(e)(1)-(3) (West 2022). Clear and convincing evidence is "that quantum of proof that leaves no reasonable doubt in the mind of the fact finder about the truth of the proposition in question." *In re Tiffany W.,* 2012 IL App (1st) 102492-B, ¶ 12.

¶ 16 Mr. Jones' initial contention is that the State failed to prove by clear and convincing evidence that he committed the detainable offense of home invasion. Specifically, he argues that the State failed to provide any corroborating evidence of Ms. Scales' allegations, arguing the officers on scene did not observe any signs of physical injury. We find Mr. Jones' argument unpersuasive.

¶ 17 We will not reverse a finding of clear and convincing evidence unless the circuit court's finding was against the manifest weight of the evidence. *In re C.N.*, 196 Ill. 2d 181, 208 (2001). "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *People v. Deleon*, 227 Ill. 2d 322, 332 (2008).

¶ 18    Home invasion is one of the offenses listed by the Act that are eligible for detention. See 725 ILCS 5/110-6.1(a)(1.5). A person commits home invasion when he, not being a peace officer and without authority, enters a dwelling place of another when he or she knows or has reason to know that one or more persons is present and intentionally injures any person or persons in that place. 720 ILCS 5/19-6(a)(2). The State proffered that Mr. Jones entered Ms. Scales' home uninvited and struck her multiple times. Mr. Jones is also alleged to have stabbed Jermaine with scissors while in Ms. Scales' home. The facts as proffered by the State meet the elements of the offense of home invasion.

¶ 19    A single, credible witness is sufficient to support a conviction. *People v. Arroyo*, 18 Ill. App. 3d 187, 189 (1st Dist. 1974). Thus, Ms. Scales' statement alone that Mr. Jones entered her home without her permission and attacked her is enough to meet the standard of clear and convincing. Additionally, Mr. Jones' contention that officers on scene did not observe signs of physical injury is unavailing, as visible injury is not a requirement under the statute. See *People v. Dorsey*, 2016 IL App (4th) 140734, ¶ 27 ("*any* physical, emotional, psychological, or traumatic injury intentionally caused by the defendant to a person inside the dwelling is sufficient***with or without physical contact"). We therefore find that the State has met its burden as to the first element.

¶ 20    Mr. Jones then challenges the circuit court's ruling that no condition or combination of conditions would mitigate the threat he poses to the community. He argues that release with GPS monitoring would protect the community, ensure his appearance at a later hearing, and prevent him from being charged with a subsequent felony or Class A misdemeanor. He claims that his lack of domestic battery convictions and Ms. Scales' nonvisible injuries support a finding that less restrictive conditions are appropriate in this case.

¶ 21    We apply the abuse of discretion standard when assessing the circuit court's finding as to the issue of conditions. *People v. Reed*, 2023 IL App (1st) 231834, ¶ 24. An abuse of discretion occurs when the court's decision is arbitrary, fanciful, or unreasonable, or where no reasonable person would agree with the position adopted by the court. *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9.

¶ 22    Section 110-5 of the Code outlines factors for the circuit court to consider in determining the conditions of release. These factors include the nature and circumstances of the offense charged, the weight of the evidence against the defendant, and the defendant's criminal history. 725 ILCS 5/110-5(a)(1)-(3) (West 2022). When a person is charged with domestic battery, as Mr. Jones is charged here, the court may additionally consider whether the person has a history of domestic violence, whether the person has a history of violating the orders of any court, whether the person has exhibited obsessive or controlling behaviors, or any other factors deemed by the court to have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior. *Id.* § 110-5(a)(6).

¶ 23    As to the third element, in its proffer, the State presented Mr. Jones' previous arrest for domestic violence, as well as the facts surrounding the arrest, to the court. In that matter, officers responded to a call of a violation of a civil order of protection. Ms. Scales, who was also the complaining witness in that matter, told officers that Mr. Jones struck her twice in the face with a closed fist, resulting in swelling the officers could observe. While speaking to the officers, Mr. Jones, identified by Ms. Scales, drove past her apartment building three times. The State also argued that based on the current allegation that Mr. Jones attacked another person while being detained for a home invasion, he had shown that no condition would protect any person or the community.

¶ 24    The court ruled that the State met its burden as to the third element. The court relied upon the allegation that Mr. Jones entered Ms. Scales' home in the middle of the night without permission; had abused Ms. Scales in the past, such that she had to re-enforce her door; and he had previously violated court orders. The court noted that Mr. Jones "has a hard time controlling his passion" and "has shown that when [Ms. Scales] is with someone else, he cannot control himself," concluding that he would have no problem disregarding GPS in the future.

¶ 25    The circuit court's finding that there is the no condition or combination of conditions of release would protect the community was not an abuse of discretion. Accordingly, we affirm the judgment of the circuit court.

¶ 26                            III. CONCLUSION

¶ 27    For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 28    Affirmed.